IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

U. S. DISTRICT COURT
WESTERN DIST. ARKANSAS
F I L E D

MAR 27 1992

CHRIS R. JOHNSON, Clerk

By _____
Deputy Clerk

W.T. DAVIS, ET AL.

PLAINTIFFS

VS.                    NO. 89-6088

HOT SPRINGS SCHOOL DISTRICT, ET AL.                    DEFENDANTS

<u>MEMORANDUM OF THE PARTIES IN SUPPORT OF THE COMPREHENSIVE
GARLAND COUNTY SCHOOL DESEGREGATION SETTLEMENT</u>

### Introduction

The law strongly favors settlements.  Courts should
hospitably receive them.
. . . .
A strong public policy favors agreements, and courts
should approach them with a presumption in their
favor.

<u>Little Rock School District v. Pulaski County Special
School District, et al.</u>, 921 F.2d. 1371 at 1383, 1388 (8th
Cir. 1990)

### Background and Procedural History

This action was filed on August 18, 1989.  The complaint

alleged various economic and student population differences

between and among the public school systems operating in

Garland County, Arkansas, and historic allegations concerning

the State.  Included as defendants are the Garland County Board

of Education and the Arkansas State Board of Education.

Various forms and levels of equitable and financial relief were

sought.

The parties engaged in sufficient discovery to enable them

to assess the strengths and weaknesses of the claims presented

8
0

by the plaintiff class.  However, most of their energies have
been focused, appropriately we think, toward settlement, rather
than litigation, of this case.  The parties have been
especially mindful that bitter and protracted litigation,
particularly involving multiple parties and multiple issues,
can drain scarce public resources better directed toward the
shared goal of all of the parties to this case:  improvement in
education in Garland County.

### The Settlement Agreement

Although liability, if any, has not been litigated in this
case, the parties have nevertheless agreed to a comprehensive
settlement agreement which provides significant relief for the
plaintiff class.  Of particular significance is the agreement
by all of the defendant school districts to implement the
School Choice Act of 1989, an otherwise voluntary program to
which the defendants now bind themselves.  This Act states that:

> The General Assembly hereby finds that the students
> in Arkansas' public schools and their parents will
> become more informed about and involved in the public
> educational system if students and their parents or
> guardians are provided greater freedom to determine
> the most effective school for meeting their
> individual educational needs.  There is no "right"
> school for every student and permitting students to
> choose from among different schools with differing
> assets will increase the likelihood that some
> marginal students stay in school and that other, more
> motivated students find their full academic potential.

The implementation of this Act on a county wide basis will
facilitate the voluntary movement of minority students from the

2

Hot Springs School District to any other district in the county and will, in turn, permit the transfer of any majority students from any other Garland County District to the Hot Springs School District.

Also of import is the agreement of all of the school districts to form the Garland County Education Consortium.  The Consortium will convene at least twice a year to examine issues related to the racial composition of each of the districts in Garland County, to discuss issues related to consolidation and to pursue financial matters such as joint purchasing and program sharing designed to reduce the cost of education in this county.  That body shall also act as the appropriate forum to discuss the hiring of minority personnel.  The Arkansas Department of Education will determine the relevant labor market available for such positions.

As part of this comprehensive agreement, the State of Arkansas agrees to provide significant assistance to these districts in the areas of staff development, with emphasis upon teacher training, civil rights and race relations training and multicultural counseling strategies.

The State has also agreed to provide curriculum development and support particularly in the areas of multicultural education, textbook and instructional material selection and the development of self-esteem curriculum.

Because all of the parties agree that reduction in learning disparity between the races is an important goal, the

3

State also is binding itself to provide particularized training in this area.

The State has further agreed to assist the districts to develop programs and procedures designed to address the over-representation of minority students in special education and the under-representation of minority students in gifted and talented education.

The parties also recognize that the individual achievement of students is greatly influenced by the day to day relationship between student and teacher.  To enhance these relationships, the State has also agreed to provide particularly described programs designed to improve these relationships.

The State has also agreed to provide grants assistance and is obligating itself to conduct equity monitoring for desegregation.  To promote positive equity outcomes, each school district is obligating itself to appoint to its equity committee one member of the Garland County Chapter of the NAACP.

Finally, the comprehensive settlement agreement contains express provisions regarding the payment of attorneys' fees, release and dismissal of the parties to the litigation, class certification and an agreement that there shall be no further litigation in this case except to the extent necessary to enforce the terms of the settlement agreement.

The Agreement has been executed by all of the parties who stand ready to execute the releases upon approval of this Agreement.

4

## The Law

The United States Court of Appeals for the Eighth Circuit has articulated the standard to be used in assessing and evaluating the proposed settlement agreement.

> A strong public policy favors agreements, and courts should approach them with a presumption in their favor.  As the Seventh Circuit said in Armstrong, supra:
>
>> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public.

LRSD v. PCSSD, supra at 1388.

The parties have summarized the basic components of the Settlement Agreement.  It is an agreement borne of negotiations in which the certified class was represented by counsel who also represented the Garland County Chapter of the NAACP.  It is an agreement in which the interests of the State were represented and negotiated by counsel and the Arkansas State Board of Education.  It is an agreement in which the seven defendant school districts in Garland County were represented by counsel and their respective boards and superintendents.  Accordingly, all of those with a direct stake in the outcome of this case have been represented in the negotiations and have agreed to the terms of the Settlement Agreement.  The public has been represented in a representative capacity by all of the foregoing described entities including the multiple elected boards of education which are parties to this litigation.

5

It is important to note that the published notice of this settlement has drawn but a single response.[1]   Paragraph 1 of the March 13, 1992 filing (hereinafter "the March filing") questions the composition of the Garland County Education Corsortium.  Matters such as these, however, it is respectfully submitted, are subject to the same standard articulated by the Court of Appeals to guide courts in assessing settlements, to wit:

> [J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel . . .  Settlement agreements carry with them a presumption of acceptability, . . .

LRSD v. PCSSD, Id., at 1385.

The parties believe the same standard should apply to observations such as those described in the first paragraph of the March filing and that these observations should be disregarded.

Paragraph 2 of the March filing, the parties submit, at most amounts to an uninformed lament concerning this litigation

---

[1]The response was filed on March 13, 1992.  It bears no heading and is not readily describable as an objection, at least in the view of the parties.  Significantly, nowhere does it contain a prayer or suggestion that the Settlement Agreement should not be approved.  However, since it was apparently filed in response to the opportunity to present objections to the settlement agreement, the parties will discuss it briefly.

and it does not rise to the level of an objection to approval of the Settlement.[2]

---

[2]Early in this case, after the parties completed their preliminary assessments of the legal issues, they determined that the issue of local autonomy, important to any serious discussion of consolidation, could not be seriously questioned in this case.  As the Court of Appeals has made clear in this circuit:

> [T]he notion that school district lines may be casually ignored or treated as a mere administrative convenience is contrary to the history of public education in our country.  * * *  Local autonomy has long been thought essential both to the maintenance of community concern in support for public schools and to the quality of the educational process. Milliken I, 418 U.S. at 741-42, 94 S.Ct. at 3125-26.

LRSD v. PCSSD, et al., 778 F.2d 404, 434 (8th Cir. 1985)

In his concurring opinion in the Pulaski County desegregation case, now Chief Judge Richard Arnold noted:

> Consolidation would mean destruction of three popularly governed units of local government, and substitution in their stead of one judicially created and judicially supervised school district.
>
> * * *
>
> Consolidation is a drastic step that should be reserved for clearer cases.

Id., at 436, 437.

Further, as previously noted, the Arkansas General Assembly has now effectively swept away legal barriers to the free movement of students across district lines for desegregation purposes.  The option of School Choice did not exist during the liability phase of the Pulaski County case but its existence has influenced the parties in agreeing upon their settlement in this case.

Paragraph 3 basically poses a series of questions easily answered by the express terms of the Settlement Agreement.  At page 15 of the Agreement, the court can see that:

> The Davis plaintiffs release the districts and the
> State of all liability for issues which have been
> raised in this litigation and commit that there will
> be no further litigation among or between plaintiffs,
> the State and any of the districts, other than
> proceedings to enforce the terms of this Settlement
> as finally approved by the court.

One reason, of course, that class actions demand notice and an opportunity for objections to be heard is so that the familiar principles of res judicata, collateral estopple and estopple by judgment can be invoked to preclude any effort by others to relitigate issues which are disposed of by this case.  Clearly, if any one or more of the parties fail to carry out the promises they have made herein, the jurisdiction of this court may be invoked again to "enforce the terms of this Settlement as finally approved by the court."  (Agreement at 15)

Paragraph 4, it is respectfully submitted, is simply a reincarnation of the kind of attorney criticism that prompted the Court of Appeals to recently state that:

> Lawyer bashing is popular in some quarters, and some
> lawyers deserve criticism, but the efforts of counsel
> in this case are worthy of substantial recognition.

LRSD v. PCSSD, at 1392.

As the court will see from the proof placed before it at the fairness hearing, this case, despite the presence of multiple parties and, necessarily, multiple counsel, has

8

actually cost the school districts very little money.  Indeed,
a guiding principle utilized by the parties and their counsel
from the outset of this litigation was to manage it in a way
and toward an end, which we believe we have achieved, that
would produce the best results for the least expenditure of
money.

While the March filing does not specifically challenge the
only fee the settlement agreement provides, that being $30,000
to be paid to counsel for the class, nevertheless the parties
do understand that:

> Courts, however, have broad inherent supervisory
> powers over attorneys practicing before them.  They
> may inquire into the fees charged by lawyers and
> regulate or curtail them if necessary to protect
> clients from imposition or to prevent otherwise
> unconscienable behavior.  (Citation omitted)  This is
> especially true in class actions and cases involving
> plaintiffs who are minors.

LRSD v. PCSSD, Id., at 1391.

In focusing only upon the fee provided by the Settlement
Agreement, all of the parties agreed the fee is reasonable
under all of the circumstances of this case.  Because of its
relative modesty, (compare LRSD v. PCSSD, Id., at 1390-1393)
the parties perceive no particular reason to extend this
memorandum regarding the fee.  They do wish to observe,
however, that the March filing's estimate of total fees
approximating almost one-half million dollars is absolutely and
totally wrong.  As the proof will show, the net fees paid
directly by all of the districts in this case are modest.

Conclusion

     The parties have assessed the relative merits of this action and submit that they have entered into a settlement agreement tailored to their informed view of this case.  They respectfully suggest and request that particularly given the lack of substantive objection to its terms and conditions, that this court should approve it.

                              Respectfully submitted,


Hurst Law Offices                 Evans, Farrar, Reis & Love
201 Woodbine                      600 West Grand Ave., Ste 201
Hot Springs, Arkansas   71901     Hot Springs, Arkansas   71901

Q. Byrum Hurst, Jr.               Bryan J. Reis, David M. Love
Attorneys for Plaintiffs          Attorneys for Hot Springs
                                  School District


Wood, Smith & Schnipper           Hargraves & McCrary, P.A.
123 Market Street                 P.O. Box 519
Hot Springs, Arkansas   71901     Hot Springs, Arkansas   71901

Donald Schnipper                  Robert Hargraves
Attorneys for                     Attorneys for Mountain Pine
Lakeside School District          School District


Laser, Sharp, Mayes, Wilson,      McMillan, Turner & McCorkle
Bufford, & Watts, P.A.            929 Main Street
One Spring Street, Suite 300      P.O. Box 607
Little Rock, Arkansas   72201     Arkadelphia, Arkansas   71923

Dan F. Bufford                    Mr. Ed McCorkle
Attorneys for Cutter Morning      Attorneys for Jessieville
Star School District              School District


Smith, Stroud, McClerkin,         Ray Owen, Jr.
Dunn & Nutter                     Attorney at Law
Suite #6, State Line Plaza        320 Ouachita Avenue, Ste. 300
Texarkana, Arkansas   75502       Hot Springs, Arkansas   71901

Hayes McClerkin                   Ray Owen, Jr.
Attorneys for Fountain Lake       Attorneys for Garland County
School District                   Board of Education

Arkansas State Bd. of Education
Arch Ford Building
Capitol Mall
Little Rock, Arkansas  72201

Wright, Lindsey & Jennings
2200 Worthen Bank Building
200 West Capitol Avenue
Little Rock, AR 72201-3699
(501) 371-0808

Sharon Streett
Attorney at Law

By _____
   M. Samuel Jones III
   On Behalf of All Parties

5018I