**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION**

**W.T. DAVIS, INDIVIDUALLY;
AARON GORDON AND CARLTON R. BERRY
ON BEHALF OF A CLASS OF TAXPAYERS
OF GARLAND COUNTY, ARKANSAS, SIMILARLY SITUATED;
AND THE GARLAND COUNTY CHAPTER OF THE N.A.A.C.P.            PLAINTIFFS**

**VS.                          CASE NO. 6:89-CV-06088**

**HOT SPRINGS SCHOOL DISTRICT;
STATE OF ARKANSAS;
ARKANSAS STATE BOARD OF EDUCATION;
THE COMMISSIONER OF THE STATE BOARD OF EDUCATION;
CUTTERMORNING STAR SCHOOL DISTRICT;
FOUNTAIN LAKE SCHOOL DISTRICT;
JESSIEVILLE SCHOOL DISTRICT
LAKE HAMILTON SCHOOL DISTRICT;
LAKESIDE SCHOOL DISTRICT; AND
MOUNTAIN PINE SCHOOL DISTRICT                          DEFENDANTS**

**RESPONSE TO DEFENDANTS'
MOTION FOR RELIEF FROM SETTLEMENT AGREEMENT
AND COUNTER MOTION**

**COME NOW** the Plaintiffs, W.T. Davis, Individually and on Behalf of a Class of

Taxpayers of Garland County, Arkansas, Similarly Situated and The Garland County

Chapter of the N.A.A.C.P., by and through its attorneys, Hurst Law Group, through Q.

Byrum Hurst and Justin B. Hurst, and for their Response to Defendants' Motion for Relief

from Settlement Agreement herein, state and allege:

1.     In 1989 the Plaintiffs filed this action and admit Paragraph 1 of Defendants'

Motion.

2.     The Plaintiffs acknowledge that the parties settled this action and the Court

approved the Settlement Agreement and adopted it as a consent decree.

Therefore, Paragraph 2 of the Defendants' Motion is admitted.

3.      The Plaintiffs acknowledge that in 2013 six (6) of the Garland County School District, all except Hot Springs School District, petitioned the Court for relief and the Court denied the relief and stated that the Settlement Agreement should remain in full force and effect despite the changes in the 1989 School Choice Act.  The Court pointed to the ultimate goal of the original litigation and refused the School District Petitioners for relief from the Settlement Agreement.  Therefore, Paragraph 3 of Defendants' Motion is admitted.

4.      In 2014, six (6) of the Districts, all of them except Hot Springs School District, moved for relief (ECF No. 174) from the Settlement Agreement and argued that changes in the Arkansas law incorporated into the Settlement Agreement constituted a change of circumstance justifying termination of the Settlement Agreement and District obligations under it.  They also argued that they had reached unitary status and had achieved the goal of the Settlement Agreement.  The Court denied the Motion (ECF No. 194), again stating that there were goals to be achieved by the Settlement Agreement.

5.      The Districts appealed (ECF No. 195) to the Eighth Circuit Court of Appeals and oral argument was held in St. Louis, Missouri and the Eighth Circuit Court of Appeals upheld the District Court's ruling.[1]

6.      All seven (7) Districts now move for relief from the Settlement Agreement and refer back to their 2014 pleading which was denied by the Court and apparently are stating that their Motion in 2014 should be revisited as there

---

[1] *Davis v. Hot Springs School District*, 833 F.3d 959 (8th Cir. 2016)

are other arguments that the District made good faithful compliance with the Settlement Agreement and they eliminated the vestiges of past discrimination to the extent practicable.  The Districts do not argue that the Districts were denied the opportunity to present any evidence that was available and they appealed.    The Plaintiffs deny Paragraph 5 of Defendants' Motion.  The Districts have attached affidavits from each school superintendent which basically are similar.   The affidavits appear to be duplicative in the most part and each asks that they be declared unitary. The Plaintiffs' response contains an affidavit controverting the facts of unitary status.

7.    That the Settlement Agreement asserts that there is "under-representation of students and gifted and talented education and there should be a workshop designed to teach the staff how to identify under-representation of minorities and children from lower socio-economic backgrounds in gifted and talented education how to design and implement those programs."  The Defendants' Motion for Relief does not address this at all because it is not properly being represented by the Defendants.    In the Settlement Agreement on Page 12, which is attached as Exhibit "A," the Department of Education agreed to provide equity monitoring in compliance with Standard 15 of the Arkansas Educational Standards in order to determine if the Districts are providing a quality desegregated education to all their students. Monitoring was an important part of the Settlement Agreement, but it is the

most important part of the Settlement Agreement and prevented what would have been serious and protracted litigation in 1989.

8.    That the Affidavit of Marsalis Weatherspoon is attached hereto as Exhibit "B" and incorporated herein by reference.

9.    That the Plaintiffs deny each and every material allegation not admitted herein and submit that the goals of the Settlement Agreement are ongoing goals and require annual monitoring to ensure the goals are being met.

## COUNTER MOTION

10.    It appears that the State Defendants' have threatened the various School Districts with a lack of accreditation if they are involved in a civil rights desegregation case.

11.    At one time in the state of Arkansas there were several civil rights desegregation cases in various parts of the state.  Those cases proceeded in various ways and reached different and distinct settlements, judgments, or dispositions.  This case should stand on its own and the primary aspects of it were that the parties were persuaded that the principal resort toward which they should aspire in the case was quality education "for all children of Garland County."  The parties were concerned and expressed in their settlement terms that to achieve this goal "the Arkansas Department of Education and the State Board of Education are supported in the settlement by the Governor of the State of Arkansas."

12.    That even though the governor of the state of Arkansas changes from time to time within the election process the State Defendants are still obligated

to be in compliance with the Settlement Agreement and were required as a part of the settlement to organize a Garland County Education Consortium. The Consortium was to meet at least semi-annually and discuss and examine pertinent issues which are described within the Settlement Agreement.

13.     The obvious intent of the agreement was to monitor a situation which required not only students and the ratio of black students to white students, but issues relating to teachers and staff including salary and the issues of diversity and differing philosophies among the respective School Districts. It is obvious that the concern of the Agreement is that some School Districts may not have programs and multicultural curriculum because of the small ratio between white and black students.  The State Defendants have now engaged in directing a curriculum which prohibits the teaching of important black history and have made threats to the School Districts through the lack of accreditation that their continued involvement in desegregation litigation would in itself be grounds for a lack of accreditation whether the goals and end relief has been met by the School Districts.

14.     Even though there have been changes as to the State Defendants through the Department of Education, the Settlement Agreement should be applied to the State of Arkansas.  The Plaintiffs would move that the Court order that the State Defendants not use coercion and duress on the School Districts or give any District a lack of accreditation because it is still involved in this litigation.  The Settlement Agreement was to ensure various goals

were made and part of that goal was to ensure that the staffs of every School District receive necessary and appropriate staff development. There is no evidence that supports that the staff of every School District has received necessary and appropriate staff development.

15. There is evidence that there is a lack of meaningful minority staff in the Districts of Cutter Morning Star, Jessieville School District, and Fountain Lake School District. This is a concerning factor and does not meet the obligation in the Settlement Agreement that "the Department of Education agrees to provide the following staff training" which is contained on Page 6, Paragraphs 1, 2, 3, and 4 of the Settlement Agreement, which is attached hereto as Exhibit "A" and incorporated herein by reference as if set out word for word.  The Settlement Agreement on Page 7 of Exhibit A sets out that there should be a multicultural education seminar designed to educate the staff about multicultural education philosophy.  There is no mention that this has been complied with in the Defendants Motion for Relief.

16. There is also reference to textbook and instructional material or the State Defendants providing a specialist in the curriculum area to assist in selecting textbooks which reflect multicultural curriculum by the Districts.

17. Instead, there is grave concern that textbooks and legislation are designed to eliminate "so-called "Critical Race Theory"."

18. There is also a complete lack of self-esteem curriculum as set out in Paragraph 3 of Page 7 to raise self-esteem of students who are at risk for school failure.  These could be students in an area of poverty on a socio-

economic level and also minority students who would be most concerned about self-esteem.

19.    The lack of minority students in a District does not mean those students need to be forgotten, as a great majority of students are not the focus of the Agreement.

20.    The Plaintiffs move by Counter Motion that all Defendants be required to adhere to the Settlement Agreement and the curriculum which it outlines regardless in the change of the name of party Defendants.

21.    The Districts should be ordered to comply with each and every term of the Settlement Agreement which is attached as Exhibit "A."  The Agreement was signed not only by each of the seven (7) School Districts and their attorneys but also by the Arkansas State Board of Education, which bound the State of Arkansas to the Settlement Agreement, including Arkansas' Executive Branch, which is the Governor of the State of Arkansas.

22.    The Plaintiffs expected full compliance with the Settlement Agreement when it was signed by all Defendants and yet, the Defendants want relief from the Settlement Agreement which means relief from the monitoring and providing the Plaintiffs with valuable information about the treatment of education on school children in the state of Arkansas.

23.    That the Plaintiffs pray and submit that the Motion for Relief from Settlement Agreement should be denied and that the Counter Motion to order the State to refrain from threatening the School Districts with a lack of accreditation or to engage in coercion or duress or in any other aspects that relate to the

litigation and to comply fully and completely with each and every area of the Settlement Agreement.

## **ATTORNEY FEES**

24.   The Plaintiffs submit that their attorney fees and expenses be paid by the Defendants jointly or severally.  When the Plaintiffs settled the civil rights litigation on August 18, 1989, they were paid attorney's fees and expenses as they were forced to bring the cause of action.

25.   Since that time, there have been other attempts by the Defendants to relieve themselves of the obligation of the Agreement and one such effort resulted in the Defendants filing an appeal to the Eighth Circuit Court of Appeals for the unsuccessful attempt for relief from the Settlement Agreement.

26.   Although the Plaintiffs did not seek attorney fees at the time, they were forced to hire attorneys to travel to St. Louis, Missouri, and argue their case where the Eighth Circuit upheld the ruling of the lower Court.

27.   The Plaintiffs are seeking their attorney fees and expenses for Plaintiffs arguing that the Defendants' Motion for Relief from Settlement Agreement is again, not meritorious.  They are also seeking attorney fees and expenses for their actions over the years required to enforce the agreement, which was entered into in good faith by all Defendants, including the Arkansas Department of Education.

28.   The Plaintiffs again seek their attorney fees, costs, and expenses incurred, including travel and transportation costs, in successfully defending the Settlement Agreement at the Eighth Circuit Court of Appeals.

**WHEREFORE**, the Plaintiffs pray that the Defendants' Motion for Relief from Settlement Agreement be denied as there is insufficient evidence to show for compliance with Garland County School Desegregation Case Comprehensive Settlement Agreement entered into on August 18, 1989; and that the State Defendants be ordered to refrain from using a lack of accreditation to any School District Defendant involved in the Garland County School Desegregation Case Comprehensive Settlement Agreement, as there needs to be monitoring and compliance with the Agreement and no valid reason to give a District lack of accreditation for its agreement to be continually semi-annually monitored or forced to engaging in a consortium designed to educate the Plaintiffs on the progress of desegregation in all seven ( 7) of the Garland County School District; and the Plaintiffs pray for their attorney fees, costs and expenses incurred in defending Defendants' Motion for Relief from Settlement Agreement and previous motions that were made by some of the School Districts and appealed causing the Plaintiffs to incur expensive attorney fees and costs; and for all other relief to which the Plaintiffs may be entitled.

Respectfully submitted,

Q. Byrum Hurst, Ark. Bar No. 74082
Justin B. Hurst, Ark. Bar No. 2005021
Hurst Law Group
520 Ouachita Avenue
Hot Springs, Arkansas 71901
(501) 623-2565 Telephone
(501) 623-9391 Facsimile
qbyrum@hurstlaw.org
justin@hurstlaw.org

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of October, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Scott A. Irby
Gary D. Marts, Jr.
Wright, Lindsey & Jennings, LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699

Tim Griffin
Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201

 /s/ Q. Byrum Hurst_____
Q. Byrum Hurst