IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

W.T. DAVIS, INDIVIDUALLY; AARON
GORDON AND CARLTON R. BERRY ON
BEHALF OF A CLASS OF TAXPAYERS
OF GARLAND COUNTY, ARKANSAS,
SIMILARLY SITUATED; AND THE
GARLAND COUNTY CHAPTER OF
THE N.A.A.C.P.                                                                              PLAINTIFFS

V.                                      CASE NO. 6:89-cv-06088

HOT SPRINGS SCHOOL DISTRICT;
STATE OF ARKANSAS; ARKANSAS
STATE BOARD OF EDUCATION; THE
COMMISSIONER OF THE STATE
BOARD OF EDUCATION; CUTTER
MORNING STAR SCHOOL DISTRICT;
FOUNTAIN LAKE SCHOOL DISTRICT;
JESSIEVILLE SCHOOL DISTRICT
LAKE HAMILTON SCHOOL DISTRICT;
LAKESIDE SCHOOL DISTRICT; AND
MOUNTAIN PINE SCHOOL DISTRICT                                                                DEFENDANTS

## PETITION FOR ATTORNEY'S FEES

**COME NOW** the Plaintiffs' counsel, Justin B. Hurst and Q. Byrum Hurst, and for their Petition for Attorney's Fees, they state and allege:

1. The attorney Q. Byrum Hurst filed this cause of action in 1989 on behalf of W.T. Davis, individually; Aaron Gordon and Carlton R. Berry on behalf of a class of taxpayers of Garland County, Arkansas, similarly situated; and the Garland County Chapter of the NAACP and pursued it against seven (7) school districts: Hot Springs School District, Cutter Morning Star School District, Fountain Lake School District, Jessieville School District, Lake Hamilton School District, Lakeside School District, and Mountain Pine

      School District, as well as the State of Arkansas and the Arkansas State Board of Education.

2. That United States District Judge Franklin Waters presided over an omnibus hearing and fairness hearing concerning a settlement proposal between the parties which encompassed not only the proposed Settlement Agreement, but he also found that it was a class action. Doc 82, Order and Memorandum executed on the 28th day of April, 1992, by Honorable H. Franklin Waters, and filed of record on the 1st day of May, 1992.

3. That although there were strong objections and disagreements with the cause of action, the Plaintiffs prevailed and entered into a Settlement Agreement approved by all the Defendants and their counsel.

4. The first few years subsequent to the Settlement Agreement, the Defendants were reluctant or slow in taking any action to initiate the terms of the Settlement Agreement, and after several months of meetings and threats at contempt and other sanctions, the Plaintiffs filed a Motion for Contempt and to avoid Court intervention, the Defendants began to slowly comply with the agreement that they had voluntarily entered into.

5. The Settlement Agreement required that the Defendants take various steps and various measures to eliminate all vestiges of segregation within Garland County. Until 1970, the public schools in Garland County did not allow black students to attend the schools with white students. Various schools, including Langston High School, were established where black students could receive an education. It was evident for a long period of time that major resources and funding were going to the public schools in which

white students attended but black students weren't allowed to get the same education.

6. That despite the fact that bringing a civil rights desegregation case was extremely unpopular among a large segment of the population, the Plaintiffs' attorneys litigated the matter without fear or intimidation, despite the resources used by the Defendants, which included basically unlimited state funds. That although the Defendants were successful in a recent dismissal of the desegregation case, which had survived for thirty-five (35) years, the goal of the Plaintiffs, according to the Court's ruling, were met. In other words, the Plaintiffs at all stages of the litigation were interested in the protection of all students, regardless of race, color, or creed in Garland County, to get the best education they could and that the school district participate in cultural enrichment and the training of staff and teachers in order they could provide the students with the best education.

7. That although it can be viewed as the case that lasted some thirty-five (35) years, was dismissed as a victory for the Defendants, it was, in reality, a victory for the Plaintiffs, because they forced the school districts into a unitary status as to the goals of desegregation. In that aspect, the Plaintiffs are the prevailing parties.

8. The Plaintiffs' attorneys have been paid only once in the case. When the case was settled in 1991, the Plaintiffs' counsel received a fee of $30,000.00 which was roughly a third of the amount in time and expenses incurred. But it was a settlement, and it helped to reduce legal fees to negotiate a very good settlement for the Plaintiffs.

9. That the Plaintiffs' attorneys have attempted to recapture, calculate, and estimate the fees that have incurred since the Settlement Agreement in 1991. The attorneys have had to monitor the situation to make sure it was being adhered to by all parties, and at one time had to defend a Motion to Dismiss that was filed by six (6) of the seven (7) school districts in which the Plaintiffs prevailed and the Defendants appealed to the Eighth Circuit Court of Appeals, where the Eighth Circuit affirmed United States District Judge Robert Dawson's opinion. The Plaintiffs have over the years had to appear when the desegregation issues were discussed by the legislature and by legislative committees.

10. Although there is no fixed formula in determining computation of attorney fees, the Court should be guided by recognized factors in making their decision including:

   (a) the experience and ability of the attorney;

   (b) the time and labor required to perform the legal services over a period of time;

   (c) the amount involved in the case and the locality for similar legal services;

   (d) the time limitations imposed upon the client or by the circumstances; and

   (e) the likelihood, if apparent, that the acceptance of the particular employment would preclude other employment by the lawyer.

11. Q. Byrum Hurst, Jr. has been an attorney for over fifty (50) years. He has served as president of the Garland County Bar Association, as well as the

president of the Arkansas Trial Lawyers Association, which is composed of approximately one thousand lawyers who specialize in trial. He has been the speaker and moderator at various conferences and seminars, and is the founder and served as chairman of the Board of the Garland County Public Schools Education Foundation from 2015 to the time he sustained a stroke in 2022. Attorney Justin Hurst has been a practicing attorney for almost twenty (20) years, and is admitted to practice law in the Eighth Circuit Court of Appeals, where he successfully argued in 2016 that Judge Robert Dawson should be affirmed in his refusal to dismiss the case at that time.

12. That the attorneys practice in a firm known as Hurst Law Group and are aware that there is a certain segment of the population in the state of Arkansas that might hesitate to hire them because of their willingness to take on cases that are controversial and involve suing all seven school districts and primarily for the benefit of the National Association for the Advancement of Colored People (NAACP). In recent years, there has been uptick of controversy that would not like the attorneys being adversarial with these segregation matters, and be in an adversarial role against school districts, school superintendents, school boards and school administrators, which are all composed, normally, of the leaders of the community and well thought of individuals.

13. The Plaintiffs' counsel are cognizant of the fact that this could have been detrimental to their practice because the Defendants involved were of a prominent nature, in which school boards, their elected members, and the administrative staffs of the school districts all opposed the litigation at one

time or the other, making it a movement that was controversial and could have harmed the practice of the Plaintiffs.

14. Under 42 U.S.C. 1988, the Court has discretion to award a reasonable attorney's fee in a suit brought pursuant to 1983. The standard method for calculating attorney's fees under fee-shifting statutes is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Finley v. Fry*, 2006 U.S. Dist. LEXIS 29170. The Court must consider the degree of success obtained by the plaintiff when assessing the fees to be awarded. *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (quoting *Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997)).

15. Monitoring the implementation of court-ordered remedies in desegregation cases is an essential function of the plaintiffs, as it ensures full compliance with court decrees and verifies that desegregation plans are effectively working. Services dedicated to this monitoring are compensable under § 1988. As emphasized in *Little Rock Sch. Dist. v. Arkansas*, monitoring compliance is a vital role for plaintiffs to guarantee that remedies are fully implemented. 127 F.3d 693, 696, 8th Cir. 1997. Similarly, *Jenkins v. Missouri* highlights that denying plaintiffs fees in desegregation cases would prevent them from addressing challenges to the remedies, underlining the critical nature of monitoring efforts. 967 F.2d 1248, 1251, 8th Cir. 1992. Moreover, *Northcross v. Board of Educ.* further supports this principle by stating that reasonable monitoring of court orders is integral to the success

of desegregation efforts and, therefore, compensable. 611 F.2d 624, 637, 6th Cir. 1979.

16. In post-judgment civil rights litigation, plaintiff attorneys often engage in various activities, some of which are directly related to the original litigation, while others may resemble new legal proceedings requiring separate fee determinations.  Monitoring the defendant's compliance with court orders and enforcing remedies are typically viewed as necessary components of the original case and are generally compensable. For example, the U.S. Supreme Court in *Pennsylvania v. Delaware Valley Citizens' Council* recognized that monitoring and enforcement activities, including appearances before administrative agencies affecting the consent decree, are compensable.  478 U.S. 546, 559, 1986. Similarly, *Duran v. Carruthers* and *Schafer v. Bd. of Educ.* reaffirm the compensability of monitoring activities.  885 F.2d 1492, 10th Cir. 1989; 83 F.3d 1010-11.

17. Moreover, defending remedies against subsequent attacks is a critical aspect of post-judgment activity. In *Jenkins v. Missouri*, the Eighth Circuit emphasized the importance of compensating attorneys for defending desegregation remedies, noting that such litigation often involves complex, long-term commitments that can affect entire communities.  Without fee awards for such post-judgment efforts, plaintiffs would lack the resources to sustain necessary defenses, which would undermine civil rights enforcement.  967 F.2d 1248, 1992; *Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 716-17, 1997.

18. The Plaintiffs' counsel have not been paid since 1991, but have worked diligently on behalf of their clients and although the desegregation case was dismissed, the goals of the case were met because of the diligence and pursuit of Plaintiffs and their counsel through these years. That attached hereto as Exhibit "A" is a recapitulation of time spent on this case during the past three decades, and Petitioners submit the Court should enhance the legal fees by three times because of the controversial nature of the litigation and the fact that it was necessary to make sure that the schools in Garland County were open, equal, and fair to all students.

19. In the Settlement Agreement, Section V. discusses attorney fees and how they would be paid by the various parties. The Plaintiff suggests this formula continue if attorney fees are ordered. The formula agreed by the parties at the time of the Settlement Agreement was as follows:

> "The Districts and the State Defendants agree to pay the total sum of $30,000.00 as attorneys fees and expenses to counsel for Davis. Such sums will be due and payable within ten (10) days of final Court approval of this Agreement. Of that sum, the State of Arkansas shall contribute 50% with the balance being paid by the respective school district in proportion to their respective average daily membership for the 1990-91 school year."

20. Petitioners would ask that attorney fees be awarded in the same manner. In other words, the State Defendant should pay fifty percent (50%) and the School Districts in proportion to their respective average daily membership. The reported enrollment of the School Districts is as follows:

| School District | Enrollment |
|---|---|
| Hot Springs School District | 3,754 |
| Lakeside School District | Over 3,500 |
| Lake Hamilton School District | 4,227 |
| Mountain Pine School District | 651 |
| Fountain Lake School District | 1424 |
| Jessieville School District | 859 |
| Cutter Morning Star School District | 691 |

**WHEREFORE**, Petitioners pray that their Petition for Attorney's Fees in the amount of $728,191.35 be granted and assessed against the parties in like fashion and pursuant to Section V of the Settlement Agreement entered into between the parties; and for all other just and proper relief to which they may be entitled.

    Respectfully submitted,

    Justin B. Hurst, Ark. Bar No. 2005021
    Q. Byrum Hurst, Ark. Bar No. 74082
    Hurst Law Group
    520 Ouachita Avenue
    Hot Springs, Arkansas 71901
    (501) 623-2565 Telephone
    (501) 623-9391 Facsimile
    justin@hurstlaw.org
    qbyrum@hurstlaw.org

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Scott A. Irby
Gary D. Marts, Jr.
Wright, Lindsey & Jennings, LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699

Tim Griffin
Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201

    /s/ Justin B. Hurst
    Justin B. Hurst